## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD GOODMAN, | : | CIVIL NO: 1:14-CV-01319 |
| | : | |
| Petitioner, | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | |
| JOHN KERESTES, | : | |
| | : | (Magistrate Judge Schwab) |
| Respondent.[1] | : | |
| | : | |

## REPORT AND RECOMMENDATION

Petitioner, Edward Goodman ("Goodman"), proceeding pro se, is a prisoner at SCI Mahanoy who filed this federal habeas corpus petition on July 10, 2014, pursuant to 28 U.S.C. § 2254. In his petition, Goodman raises *ex post facto* and substantive due process claims challenging the November 5, 2013, denial of parole by the Pennsylvania Board of Probation and Parole (the "Board"). For the reasons set forth below, we recommend that Goodman's petition be denied.

---

[1]     The proper respondent in a petition for a writ of habeas corpus is the official having custody of the applicant. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in The United States District Courts, 28 U.S.C. § 2254. In this case, the proper respondent is John Kerestes, the Superintendent at SCI Mahanoy, not the Attorney General of Pennsylvania or the Pennsylvania Board of Probation and Parole. Nevertheless, we will not recommend that Goodman file an amendment; instead, the Court should construe the petition as solely naming Kerestes as the appropriate respondent. *See Maher v. Pa. Bd. of Prob. and Parole*, No. 04-1277, 2005 WL 1324879, at *1 n.2 (M.D. Pa. June 3, 2005) (noting and applying the same).

I.      **Background and Relevant Procedural History**.

On August 4, 1981, the Court of Common Pleas of Philadelphia County entered a judgment of sentence against Goodman for third-degree murder, voluntary manslaughter, and seven counts each of attempted murder, aggravated assault, and simple assault.[2]  Pursuant to said judgment, Goodman was sentenced to serve 30 to 100 years' imprisonment.  Having been credited with time served, Goodman's *minimum* sentence expired on or about August 8, 2008, and his *maximum* sentence is not set to expire until August 8, 2078.  *Doc. 20-1* at 3 (Goodman's Department of Corrections sentence status summary sheet).  Since the time that Goodman's minimum sentence expired, he has been denied parole on eight separate occasions.  *See doc. 20-1* at 6-26; *doc. 27* at 3.

The subject of Goodman's instant habeas petition is his sixth parole denial, which occurred on November 5, 2013.  In denying Goodman parole on the sixth occasion, the Board provided:

> FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE [BOARD], IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOU ARE DENIED PAROLE . . . . THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

---

[2]      We take judicial notice of the docket sheets in *Commonwealth v. Goodman*, No. CP-51-CR-0901011-1978, and *Goodman v. Pa. Bd. of Prob. and Parole*, 596 MD 2013, 6 EAP 2014, available through Pennsylvania's Unified Judicial System's Web Portal at: http://ujsportal.pacourts.us/.

> YOUR RISK AND NEEDS ASSESSMENT INDICATING
> YOUR LEVEL OF RISK TO THE COMMUNITY.
>
> THE NEGATIVE RECOMMENDATION MADE BY THE
> DEPARTMENT OF CORRECTIONS.
>
> YOUR MINIMIZATION/DENIAL OF THE NATURE AND
> CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
>
> YOUR REFUSAL TO ACCEPT RESPONSIBILITY FOR THE
> OFFENSE(S) COMMITTED.
>
> THE NEGATIVE RECOMMENDATION MADE BY THE
> PROSECUTING ATTORNEY.

*Doc. 15-1* at 2.[3]  As well, the Board provided that at the next parole review, it would review Goodman's file and consider (1) whether he received a favorable recommendation from the Department of Corrections and (2) whether he maintained a clear conduct record.  *Id.*

On December 2, 2013, upon receipt of the Board's reasons for denying him parole on a sixth occasion, Goodman filed a petition for a writ of mandamus in the Commonwealth Court of Pennsylvania, alleging that the Board's sixth parole denial violated his substantive-due-process rights by acting arbitrarily and that the Board retroactively applied certain parole standards in violation of the *Ex Post Facto Clause* of the United States Constitution.  *See doc 20-1* at 32-34. Specifically, Goodman argued that the Board violated the *Ex Post Facto* Clause by

---

[3]    The original document was drafted in capital letters.

3

relying on the Pennsylvania's Probation and Parole Act as it was amended in 1996, rather than relying on the law as it stood when he was sentenced in 1981. *See doc. 20-1* at 33-34.   On January 24, 2014, the Commonwealth Court sustained the Board's preliminary objections in the nature of a demurrer and dismissed Goodman's petition.   With respect to Goodman's due-process claim, the Commonwealth Court held as follows:

> An inmate has no right to parole, and the denial of parole is not subject to judicial review. . . . The reasons set forth in the parole denial are not only permissible considerations, but statutorily required considerations. . . . Petitioner fails to state a substantive due process claim based on the denial of parole for constitutionally impermissible reasons (internal citations omitted).

*Doc. 20-1* at 55.  Furthermore, with respect to Goodman's *ex post facto* claim, the Commonwealth Court held as follows:

> Petitioner has not pleaded the existence of any evidence that would establish that he faces an increased risk of incarceration based on amendments to the Parole Act; he alleges no factual correlation between the parole denials and changes in the law . . . . It is not sufficient for a prisoner to show that the Board relied on a new law or policy; he must also adduce some evidence of a significant risk of prolonging his incarceration (internal citations omitted).

*Doc. 20-1* at 55-56.  Goodman then filed a timely appeal to the Supreme Court of Pennsylvania, which, on June 16, 2014, affirmed the decision of the Commonwealth Court.  *See also Goodman v. Pa. Bd. of Prob. and Parole*, 96 A.3d 986 (Pa. 2014) (affirming the order of the Commonwealth Court); *doc. 20-1* at 87.

4

In the instant habeas corpus petition, Goodman raises two claims for relief similar to those alleged in his attempts for relief in state court. Specifically, he claims that (1) the Board violated his substantive-due-process rights when it denied him parole for the sixth time and (2) in denying him parole for the sixth time, the Board retroactively applied parole standards that should not have applied to him, in violation of the *Ex Post Facto* Clause of the United States Constitution. Along with his petition, Goodman filed a motion (*doc. 2*) to proceed *in forma pauperis*, which we granted. *Doc. 6*. After Goodman filed his petition, we conducted a preliminary review under Rule 4 of the Rules Governing Section 2254 Cases. Rather than recommending dismissal, we issued an order pursuant to *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000). *Doc. 4*. After the deadline passed for Goodman to respond to our "*Mason-Myers* Order," we issued a show-cause order to the respondent, which required the filing of an answer and memorandum of law addressing the contents of Goodman's petition. *See doc. 7*. Rather than fully complying with our Show-Cause Order, the respondent filed a motion to dismiss Goodman's petition as second or successive. *Doc. 12*. On April 2, 2015, the undersigned issued a report and recommendation (*doc. 17*), recommending a denial of that motion, and on May 5, 2015, Chief Judge Conner issued an order (*doc. 18*) adopting the report and recommendation. Thereafter, on May 26, 2015, the respondent filed a response (*doc. 20*) to Goodman's habeas corpus petition and an

accompanying memorandum of law (*doc. 21*).  In the response, respondent argues that Goodman's petition should be dismissed for failure to state a claim upon which relief can be granted.  We now address the merits of Goodman's petition.

## II.   **Discussion.**

### A. Goodman's Petition is Moot.

After Goodman filed the current habeas petition pertaining to his sixth parole denial, the Board subsequently denied him parole a seventh and eighth time by orders dated November 10, 2014, and February 1, 2016, respectively.  *Doc. 20-1* at 24-26 (November 10, 2014 order); *doc 27* at 3 (February 1, 2016 order).  In fact, on February 25, 2016, Goodman filed a motion (*doc. 27*) to supplement the record with the February 1, 2016, parole-denial order, and the motion to supplement was granted on June 9, 2016.  *Doc. 28*.  Thus, since Goodman was reviewed for and denied parole on two occasions subsequent to the November 5, 2013 parole decision he challenges in this petition, the challenge to the November 5, 2013 decision he raises is moot.  "[A]n earlier parole decision is rendered moot by a subsequent parole decision."  *Coles v. Folino*, No. 12-238, 2014 WL 5685547, at *2 (W.D. Pa. Nov. 4, 2014) (citing *Wolfe v. Diugielmo*, No. 06-5261, 2008 WL 544645, at *6 (E.D. Pa. Feb. 28, 2008)).  In a case such as this, the only appropriate remedy we could recommend granting would be a new hearing before the Board, and since Goodman has already been afforded two new parole hearings

subsequent to his November 5, 2013 parole denial, the instant habeas petition is moot, as are challenges to *any* denials of parole prior to February 1, 2016, the date of the most recent parole denial.[4]   *See id*; *Wolfe*, 2008 WL 544645, at *6; *Alex v. Gavin*, 1:cv-14-0261, 2015 WL 8012825, at *3 (M.D. Pa. Dec. 7, 2015); *Rollins v. Kerestes*, No. 13-7473, 2015 WL 418154, at *4 (E.D. Pa. Jan. 30, 2015); *Lusik v. Sauers*, No. 13-2627, 2014 WL 3746528, at *6 (E.D. Pa. July 30, 2014); *Hunter v. Bledsoe*, No. 10-0137, 2011 WL 4830172, at *4 (M.D. Pa. Oct. 12, 2011); *Williams v. Pa. Bd. of Prob. and Parole*, 2008 WL 5120773, at *2 (E.D. Pa. Oct. 31, 2008); *DeFoy v. McCullough*, 2007 WL 2903922, at *5 (W.D. Pa. Sept. 28, 2007).

Thus, Goodman's challenge to his parole denial that occurred prior to his most recent parole denial renders his instant habeas petition moot and, therefore, denial of the petition is warranted on this ground alone.  Nonetheless, in the event the district court disagrees that the petition is moot, we address below the merits of Goodman's habeas petition and conclude that the petition would fail on the merits as well.

---

[4]     Thus, we stress to Goodman that if he wishes to raise parole-denial challenges in a future habeas petition, he can raise challenges *only* to parole denials occurring on or subsequent to February 1, 2016.

**B. State Prisoner Habeas Relief—The Legal Standard.**

In addition to overcoming procedural hurdles, a state prisoner must meet exacting substantive standards in order to obtain habeas corpus relief. As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 limits the power of a federal court to grant a state prisoner's petition for a writ of habeas corpus. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A federal court may not grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The standard under Section 2254(d) is highly deferential and difficult to meet. *Cullen*, 563 U.S. at 181. It "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter,* 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). It "'demands that state-court decisions be

given the benefit of the doubt.'"  *Cullen*, 563 U.S. at 181 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

### C.  Goodman's *Ex Post Facto* Claim.

The *Ex Post Facto* Clause of the United States Constitution "generally prohibits Congress and the states from enacting any law that imposes a punishment for an act which is not punishable at the time it was committed; or imposes additional punishment to that then prescribed.  *Diehl-Armstrong v. Pa. Bd. of Prob. and Parole*, No. 1:13-cv-2309, 2014 WL 1871509, at *4 (M.D. Pa. May 7, 2014). In order for a law to be considered an *ex post facto* law, it "must either punish as a crime an act previously committed which was innocent when done; make more burdensome the punishment for a crime after its commission; or, deprive one charged with a crime of any defense that was available when the act was committed." *Id*. (citing *Collins v. Youngblood*, 497 U.S. 37, 52 (1990)).  There are two prongs to an *ex post facto* inquiry: "(1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change." *Richardson v. Pa. Bd. of Prob. and Parole*, 423 F.3d 282, 287-88 (3d Cir. 2005) (citing *Weaver v. Graham*, 450 U.S. 24, 29 (1981)).  As the Supreme Court of the United States has explained, the controlling inquiry is whether retroactive application of the subject law creates a "sufficient risk of increasing the measure of punishment attached to the covered crimes." *Cal.*

*Dept. of Corr. v. Morales*, 514 U.S. 499, 509 (1995).   "A 'speculative and attenuated possibility of . . . increasing the measure of punishment' is not enough" to establish a violation of the *Ex Post Facto* Clause.   *Richardson*, 423 F.3d at 288 (quoting *Morales*, 514 U.S. at 509).

### 1. The 1996 Amendment to Pennsylvania's Parole Act and *Ex Post Facto* in the Context of Parole Decisions.

In December 1996, Pennsylvania's Probation and Parole Act ("the Act"), 61 P.S. §§ 331.1-331.34a, including 61 P.S. § 331.1, was "modified to make public safety the primary consideration."[5]   *Id*. at 285.   Prior to 1996, 61 P.S. § 331.1 provided:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment, and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

The 1996 Amendments changed section 331.1 to read as follows:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the

---

[5]      We will refer to the amendments to the Act, including the relevant § 331.1, as "the 1996 Amendments."

> diversion of appropriate offenders from prison.  In providing
> these benefits to the criminal justice system, the board shall first
> and foremost seek to protect the safety of the public.  In addition
> to this goal, the board shall address input by crime victims and
> assist in the fair administration of justice by ensuring the
> custody, control and treatment of paroled offenders.

Despite considering public safety in the parole determination prior to 1996, the "practical effect of the 1996 amendments was to change the weight that public safety was given in the parole calculation." *Richardson,* 423 F.3d at 289 (citing *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 387 (3d Cir. 2003)); *see also Coles v. Folino*, 2014 WL 5685547, at *2 (W.D. Pa. Nov. 4, 2014) ("Previously, the parole statute had emphasized rehabilitation and the restoration of prisoners to social and economic life.").  Thus, since the 1996 Amendments substantively changed the criteria for parole in Pennsylvania, "a petitioner who could demonstrate individual disadvantage from retroactive application of the 1996 Amendments could prevail on an ex post facto claim." *Parker v. Kelchner*, 429 F.3d 58, 64 n.5 (3d Cir. 2005) (citing *Richardson*, 423 F.3d at 290-91).[6]

A habeas petitioner challenging a state parole decision on *ex post facto* grounds, however, "faces a specific and compelling burden." *Diehl-Armstrong*, 2014 WL 1871509, at *4.  It is not enough for a petitioner whose conviction preceded a parole-law amendment to show mere application of the amended parole

---

[6]    See *Parker v. Kelchner*, 429 F.3d 58, 64 n.5 (3d Cir. 2005), for an overview of the Supreme Court of Pennsylvania's decisions regarding *ex post facto* claims challenging the 1996 Amendments.

law in considering whether to parole that inmate.  *See Richardson*, 423 F.3d at 287.

Rather, an *ex post facto* claim based upon the 1996 Amendments requires the

petitioner to establish individual disadvantage.  *Coles*, 2014 WL 5685547, at *4.

To demonstrate such particularized disadvantage, the petitioner bears the burden of

showing that "a claimed retroactive application of a change in a parole regulation

creates 'a sufficient risk of increasing the measure of punishment attached to the

covered crimes' [when applied to him or her specifically]."  *Diehl-Armstrong*,

2014 WL 1871509, at *4 (quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000)).  A

petitioner can meet this requisite burden by providing, for example, evidence "that

he [or she] would have been a good candidate for parole under the old law,

comparisons of parole rates for prisoners with similar convictions before and after

the [enactment of the amended parole law], and the extent to which the reasons

given for denying him [or her] parole would not have been considered before

[enactment of the amended parole law]."  *See Taylor v. Pa. Bd. of Prob. and*

*Parole*, 181 Fed.Appx. 253, 255 (3d Cir. 2006)

### 2. Goodman's *Ex Post Facto* Claim Must Fail.

Goodman alleges that the Board, in denying him parole for the sixth time,

violated the *Ex Post Facto* Clause by applying certain parole-consideration factors

retroactively.  Specifically, Goodman alleges that the Board considered his "risk to

the community" as a factor, and such factor was not weighted as heavily until the

Parole Act was amended in 1996 to increase an emphasis on public safety. *Doc. 1* at ¶¶ 69-71. Because the "risk to the community" factor was allegedly not emphasized heavily until 1996, long after Goodman's 1981 conviction and sentencing, he argues that applying this factor in the context of his case amounts to a violation of the *Ex Post Facto* Clause. We conclude, however, that Goodman's *ex post facto* claim is without merit.

Goodman's assertion that his sixth denial of parole amounted to an *ex post facto* violation is merely conclusory and lacks sufficient evidentiary or legal support. As discussed, simply alleging an application of the amended 1996 Parole Act to a pre-amendment conviction and sentence, as Goodman does here, is insufficient to state an *ex post facto* claim. While he alleges that the Board relied to some extent upon the 1996 Amendments in denying him parole for the sixth time, Goodman provides no evidence to suggest that he would have been paroled under the pre-1996 Parole Act. He also provides no evidence to suggest that he would have been a good candidate for parole under the pre-1996 law, nor does he provide any comparisons of parole rates for prisoners with similar convictions pre-1996 and post-1996. He further fails to explain the extent to which the reasons given for denying him parole would not have been considered before 1996.

Moreover, the Board's report is clear that the concern of public safety was not the only factor that was considered when it denied Goodman parole for the

sixth time.  As noted earlier, the Board also listed the following four factors as reasons for the parole denial: (1) negative recommendations by the Department of Corrections, (2) Goodman's minimization/denial of the nature and circumstances of the crimes committed, (3) Goodman's refusal to accept responsibility for the crimes committed, and (4) negative recommendations of the prosecuting attorney. *Doc. 15-1* at 2.  Thus, Goodman fails to establish that the Board rejected him solely on the basis of his risk to the community or that it prioritized public safety over all of the other factors it considered.  Consequently, he fails to satisfy his burden of showing that he was individually disadvantaged as a result of the November 5, 2013 parole denial.  Goodman's *ex post facto* claim, therefore, fails.[7]

### D.  Goodman's Substantive Due Process Claim.

Goodman's substantive due process claim also fails because he has not demonstrated that the Board, in denying him parole, relied upon considerations that bear no rational relationship to the Commonwealth's interests.  *See Block v. Potter*, 631 F.2d 233, 237 (3d Cir. 1980) (noting that "[w]hen the Parole Board bases its decision on factors that bear no rational relationship to rehabilitation or deterrence,

---

[7]     We note that if Goodman were to raise an *ex post facto* claim regarding his eighth parole denial, these claims would also be subject to the same analysis as set forth above.  As with the sixth parole denial, the Board considered a multitude of factors in addition to the "risk to the community factor" in ordering the seventh and eighth denials.  *See doc. 20-1* at 24-26; *doc 27* at 3.  Thus, even with respect to the seventh and eighth parole-denial orders, it appears Goodman would still fail to establish that he likely would have been paroled under the pre-1996 Parole Act.

it transgresses the legitimate bounds of its discretion").  Moreover, with respect to substantive due process and parole decisions, "federal courts are not authorized by the due process clause to second-guess parole boards, and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001).  And according to the Pennsylvania Prisons and Parole Code, the Board need only provide a "brief statement of the reasons" for its decision to grant or deny parole.  61 Pa. C.S. § 6139(a)(5).  Under a substantive due process analysis, although courts have generally granted broad discretion to parole boards in making parole release determinations, a parole board may violate substantive due process if it considers factors "foreign to the parole statute" or factors that are divorced from the policy and purposes of parole; or if it "arbitrarily denies parole based on race, religion, political beliefs, or another impermissible factor."  *Newman v. Beard*, 617 F.3d 775, 784 (3d Cir. 2010).

It has been "stressed that a substantive due process claim based upon alleged arbitrary and capricious action is not easily mounted."  *Coles*, 2014 WL 5685547, at *7 (citing *Hunterson v. DiSabata*, 308 F.3d 236, 246-47 (3d Cir. 2002)).  In fact, "the relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable"; rather, such action must be so egregious that it can be deemed "conscience shocking."  *Id.*

(citing *Hunterson*, 308 F.3d at 246-47).   Thus, "only the most egregious conduct will be considered arbitrary in the constitutional sense."   *Hunterson*, 308 F.3d at 247-48; *see also Newman*, 617 F.3d at 782 ("Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct.") (internal citations and quotations omitted).

Applying these principles to the instant substantive due process claim, we conclude that such claim is also meritless.   In his petition, Goodman contends that "even if no liberty interest existed, the denial of parole violated the [substantive] due process protection against arbitrary action of the Respondent Board."   *Doc. 1* at ¶ 57.   Stated differently, Goodman alleges that "the Respondent Board's arbitrary, pretextual, and vindictive denial of his parole application a sixth time violates his substantive Due Process rights."   *Id*. at ¶ 45.   Goodman further alleges that the Board's decision was not supported by the record, arguing that "any claim that petitioner is not suitable [for parole] is contrary to the record and was not stated by the Board as a reason for its 11/5/13 parole refusal."   *Id*. at ¶ 60.   But all of Goodman's assertions are conclusory, and he provides no evidentiary or legal support for such assertions.

Goodman makes blanket allegations that the Board denied him parole arbitrarily and vindictively, but he does not explain how the Board's acts were arbitrary or vindictive.   And, although Goodman makes vague assertions of his

belief that the Board's denial was not supported by the record, we conclude that a mere disagreement with the Board's decision is not sufficient to amount to a substantive due process claim.   Parole boards are given great deference with respect to parole release decisions; federal courts should not second-guess the decisions of parole boards; and the requirements of substantive due process are met if there is some basis for the challenged decision.   Here, in denying Goodman parole release a sixth time, the Board set forth multiple factors that contributed to its decision, all of which are listed earlier in this report.   Goodman does not allege, nor do we have reason to conclude, that the factors considered by the Board were foreign to the parole statute or divorced from the purposes and policies of parole. And, Goodman similarly fails to allege that any improper motives such as his race, religion, or political beliefs contributed to the Board's decision to deny him parole. Thus, we conclude that Goodman's substantive due process claim also fails.

Based on our above analysis of Goodman's claim and discussion of relevant federal law, we cannot conclude that the Commonwealth Court, in dismissing Goodman's petition for a writ of mandamus (and the Supreme Court of Pennsylvania in affirming this dismissal), made a decision that was contrary to or unreasonably applied clearly established federal law as determined by the Supreme Court of the United States; nor can we conclude that the Commonwealth Court's decision was based on an unreasonable determination of the facts in light of the

17

evidence presented in the State court proceeding.  Thus, we conclude that even if Goodman's habeas corpus petition was not moot, a denial of the petition on the merits is warranted.

## III.     Recommendation.

Based on the foregoing reasons, **WE RECOMMEND** that Goodman's petition for a writ of habeas corpus (*Doc. 1*), pursuant to 28 U.S.C. § 2254, be **DENIED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **3rd** day of **November 2016**.


***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge